UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,


                                               11 CR 449 (SJ)

        - against -
                                               <u>MEMORANDUM &</u>
                                               <u>ORDER</u>


CASSANDRA CEAN,


                         Defendant.
-----------------------------------------------------------X
A P P E A R A N C E S:

LORETTA E. LYNCH
United States Attorney, EDNY
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Maria Cruz Melendez
       Margaret E. Gandy
Attorneys for the United States

FREEMAN, NOOTER & GINSBERG
75 Maiden Lane
Suite 503
New York, NY 10038
By:    Louis M. Freeman
Attorney for Cassandra Cean


JOHNSON, Senior District Judge:

        On June 16, 2010, Cassandra Cean ("Defendant" or "Cean") was charged

with conspiring to engage in wire fraud in connection to an alleged mortgage fraud

scheme.  The matter proceeded to trial at which, on October 9, 2013, Cean was

1

convicted of conspiracy to commit wire fraud and four counts of wire fraud. She was acquitted of one count of wire fraud. Cean now moves the Court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure or, in the alternative, an evidentiary hearing. Based on the submissions of the parties, and for the reasons stated below, Defendant's Rule 33 motion is DENIED.

## BACKGROUND

Defendant moves the Court for a new trial, claiming that two jurors purposefully concealed their biases by providing false and misleading answers during voir dire thereby depriving her of her Sixth Amendment right to a fair trial by an impartial jury. Given the discrete nature of the Defendant's Motion, only the relevant portions of the record will be repeated here.

Chief Magistrate Judge Steven M. Gold conducted the jury voir dire on September 30, 2013. At that proceeding, the Magistrate informed the prospective jurors that the case involved a mortgage fraud scheme. (Tr. of Voir Dire, Sept. 30, 2013 ("Voir Dire"), at 15.) The Magistrate explained that the prospective jurors were under oath and should answer questions honestly and conscientiously. He stressed the importance of their obligation to "render a verdict fairly and impartially." (Voir Dire at 10, 12.)

Chief Magistrate Judge Gold informed the prospective jurors that he would ask them questions and that they should raise their hands if their answer was yes.

(Voir Dire at 19.)  Among other mortgage-related questions, the Magistrate Judge asked whether any of the prospective jurors had ever obtained a mortgage; whether any were involved in a mortgage transaction that they believed involved fraud; and whether any had a negative experience with a mortgage broker or mortgage service (Voir Dire at 61–62.)  The Magistrate provided the prospective jurors with questionnaires, and questioned each prospective juror individually.

Juror Number 6

Magistrate Judge Gold questioned Mr. Kiel A. James ("Juror Number 6") about his background.  Juror Number 6 replied:

THE PROSPECTIVE JUROR: I live in Jamaica Queens. I've been living there for 28 years. I rent. I have my bachelor's in accounting. I currently work for JetBlue.

THE COURT: What do you do for JetBlue?

THE PROSPECTIVE JUROR: I'm in their admin department helping them with payroll. I've been there for four years. I don't supervise anyone. I'm married. My wife's an RN. We have one child. Yeah, and I can be fair and impartial.

(Voir Dire at 74.)  Juror Number 6 raised his hand when Magistrate Judge Gold asked if any of the prospective jurors: (1) had ever had a mortgage, and (2) had ever used a mortgage broker.  (Voir Dire at 61–62.)

Juror Number 10

After a Court inquiry into her background, Wanda Alston-Stallings ("Juror Number 10") stated: "I'm an employee of the New York City Sheriff's Department."  (Voir Dire at 40.)  The Court then specifically inquired as to whether the Sheriff's Department investigated mortgage fraud.  Juror Number 10 responded in the negative: "Not generally, no, sir."  (Voir Dire at 40.)  Later, the Court again inquired about her employment.  She explained, "I'm currently working for the City of New York. I've been there, it will be 30 years in February. I don't supervise." (Voir Dire at 79.)   She then stated that she could be fair and impartial (Voir Dire at 40, 79.)

The jury was sworn in on October 1, 2013.  On October 9, 2013, Cean was convicted of conspiracy to commit wire fraud and four counts of wire fraud. She was acquitted of one count of wire fraud.

## DISCUSSION

I.      Rule 33 Standard

Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 places a heavy burden on the defendant, as motions for a new trial are "not favored and should be granted only with great caution." United States v. Stofsky, 527 F.2d 237, 243 (2d Cir. 1975) (internal quotation marks and citation omitted). Indeed, "[a] district court must find that there is a real concern that an innocent person may have been convicted." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted). "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).

"[A] party alleging unfairness based on undisclosed juror bias must demonstrate first that the juror's voir dire response was false and second that the correct response would have provided a valid basis for a challenge for cause." United States v. Stewart, 433 F.3d 273, 303 (2d Cir. 2006), citing McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984). This two-part test applies to inadvertent as well as deliberate nondisclosures or misstatements. See United States v. Langford, 990 F.2d 65, 68 (2d Cir. 1993). While "[t]he motives for concealing information may vary, only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." McDonough, 464 U.S. at 555. A good faith failure to respond correctly to a question does not alone warrant a new trial. See United States v. Shaoul, 41 F.3d 811, 815–16 (2d Cir.

1994).   As the Second Circuit has explained, "[t]he ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted).

## II.   Analysis

### a.   Juror Number 6

Cean claims that Juror Number 6 failed to disclose: (1) that he has a real estate salesperson license and works for a Century 21 real estate office in Queens; (2) that he had a negative experience with a mortgage lender; (3) that he purchased property with 100 percent financing and then sold it in a short sale, and (4) that a close family member had been a defendant in multiple foreclosure proceedings and involved in at least one short sale.  (Def.'s Rule 33 Mot. at 2.)

In support of such claims, Defendant attaches, among other things, a Real Estate Salesperson License from New York State for "Kiel A. James" who allegedly works at Century 21 Milestone Realty.   (Def.'s Rule 33 Mot. at Ex. B.) Defendant also attaches a profile of Mr. Kiel A. James from the website of Century 21 Milestone Realty.   (Def.'s Rule 33 Mot. at Ex. C.)   Defendant claims that Mr. James listed a property through Century 21 Milestone Realty, which was eventually sold at a short sale.  (Def.'s Rule 33 Mot. at 6, Ex. J.)   Finally, Defendant also includes records from the New York City Department of Finance, Office of the

City Register relating to alleged mortgages and deeds in the name of Mr. Kiel A. James. (Def.'s Rule 33 Mot. at Ex. D–I.)

Based on the record, the Court finds that Juror Number 6's responses were not false, and Defendant therefore fails the first prong of the <u>McDonough</u> test. Juror Number 6 indicated that he worked for JetBlue. He raised his hand when Magistrate Judge Gold asked if any of the prospective jurors: (1) had ever had a mortgage, and (2) had ever used a mortgage broker. (Voir Dire at 61–62.) Defendant Cean has failed to provide any new information or knowledge that indicates that Juror Number 6 provided false information. The information that the Defendant provided only establishes that an individual with the same name as Juror Number 6 has a real estate license, acquired property which was later sold in a short sale, or had a close family member in multiple foreclosure proceedings. Defendant's attempts at connecting such information to Juror Number 6 can be deemed nothing more than conjecture. Furthermore, Defendant failed to establish, for example, that Juror Number 6 did not work at JetBlue at the time of voir dire questioning. Thus, there is "no reasonable basis to conclude that [Juror Number 6's] responses under oath were not truthful." <u>United States v. Sattar</u>, 395 F.Supp.2d 66, 74 (S.D.N.Y. 2005), <u>aff'd sub nom</u>. <u>United States v. Stewart</u>, 590 F.3d 93 (2d Cir. 2009). Any omission by Juror Number 6 would be more reasonably construed as a mistake. <u>See, e.g.</u>, <u>Sattar</u>, 395 F. Supp. 2d at 73.

Even if the Court found that Juror Number 6's voir dire responses were false, there is no reason for the Court to find that such information would affect the juror's impartiality. <u>McDonough</u> 464 U.S. at 555. The very fact that Juror Number 6 might hold a real estate license, for example, does not imply bias. "It is well settled that a juror not shown to have actual bias is not excludable merely because he or she is a member of a particular occupation or even of law enforcement." <u>United States v. Marji</u>, 158 F.3d 60, 62 (2d Cir. 1998). In fact, Juror Number 6 specifically indicated that he could be "fair and impartial." (Voir Dire at 74.)

In his arguments relating to Juror Number 6, Defendant primarily relies on <u>United States v. Colombo</u>, 869 F.2d 149, 150 (2d Cir. 1989). There, the defendant produced an affidavit of a juror who stated that another juror confided that she had deliberately refrained from disclosing information because she wanted to remain on the panel. However, the Second Circuit has limited <u>Colombo</u> to its facts, explaining that it "did not suggest a <u>per</u> <u>se</u> rule based simply on whether a prospective juror had lied, without respect to whether the dishonesty had a bearing on her impartiality." <u>United States v. Langford</u>, 990 F.2d 65, 69 (2d Cir. 1993).[1] Thus, in <u>Langford</u>, notwithstanding a juror's intentional nondisclosure of her criminal history, the Second Circuit affirmed the district court's denial of the

---

[1] In fact, as this Court has pointed out, the Second Circuit "has never found reason to overturn a verdict on the basis of juror nondisclosure under <u>McDonough</u> and only once, <u>see</u> <u>United States v. Colombo</u>, 869 F.2d 149 (2d Cir.1989), has it remanded for an evidentiary hearing on the matter." <u>United States v. Bangiyev</u>, 2008 WL 4240005 (E.D.N.Y. Sept. 12, 2008) (citing <u>United States v. Stewart</u>, 433 F.3d 273, 303 (2d Cir.2006)).

defendant's motion for a new trial because "there was no suggestion . . . that [the juror] had any evidentiary knowledge relating to Langford's case," and the district court's finding that there was "'absolutely no evidence' that [the juror] was in any way biased or prejudiced against Langford" was not clearly erroneous.  Id.

No evidence, either in the record or produced by Defendant in connection with this Motion, indicates that Juror Number 6 harbored any bias against the Defendant.

### b.  Juror Number 10

Defendant also claims that Juror Number 10 failed to discuss that, in the course of her employment, she reviews real estate instruments.  (Def.'s Rule 33 Mot. at 2.)  As evidence of such a claim, Defendant argues that an internet search on the social networking site LinkedIn revealed that Juror Number 10 "review[s] Real Estate instruments ensuring adherence to the law for recording."  Defendant specifically alleges that "[Juror Number 10] either failed to realize or chose to ignore the inappropriateness of her sitting [on] a jury."  (Def.'s Rule 33 Mot. at 19.)

The Court finds that Juror Number 10's responses were also not false. During voir dire, Juror Number 10 indicated that the Sheriff's Office did "not generally" investigate mortgage fraud.  (Voir Dire at 40.)  Defense counsel did not seek further inquiry into Juror Number 10's work experience and background, notwithstanding the Court's repeated inquiries as to whether counsel had further

questions for any jurors.[2] Furthermore, information obtained from a social networking website cannot be verified. As a result, none of the information provided by Defendant with respect to a social networking website establishes that she was somehow dishonest in her reply to the Magistrate.

Even if Defendant could satisfy McDonough's first prong, she would fail the second prong. Juror Number 10 did not provide any information during voir dire that would establish that her employment responsibilities resulted in bias. See Langford, 990 F.2d at 70. Such information does not reflect a "manifest injustice" which would warrant a new trial. Ferguson, 246 F.3d at 134.

As a result, the Court finds that Juror Number 10's affirmation of impartiality, together with Magistrate Judge Gold's evaluation of her, was sufficient to establish that she was not biased. United States v. Garcia, 936 F.2d 648, 653 (2d Cir. 1991).

III.     Remaining Claims

The Court has considered the remaining arguments and finds that they are without merit.

---

[2] For example, the Court inquired: "Any other questions you'd like me to ask?" Defense Counsel answered "No." (Voir Dire at 89.)

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's Rule 33 Motion for a New Trial or, in the Alternative, an Evidentiary Hearing is DENIED.

SO ORDERED.

Dated: April 24, 2014                    _____/s/_____
       Brooklyn, New York                    Sterling Johnson, Jr., U.S.D.J.