

18-215-cr
United States v. Cean

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of June, two thousand nineteen.

PRESENT:  RALPH K. WINTER,
 JOSÉ A. CABRANES,
 REENA RAGGI,
  *Circuit Judges.*

UNITED STATES OF AMERICA,

 *Appellee*, 18-215-cr

 v.

CASSANDRA CEAN,

 *Defendant-Appellant*,

SHANE BROWNE, BIBI OMAR, A/K/A ZAMEENA OMAR, KIM RAMLOCHAN A/K/A KIM CUPELES AKA KIM YOHAY,

 *Defendants.*

1

MANDATE ISSUED ON 09/10/2019

| FOR APPELLEE: | Emily Berger, Maria Cruz Melendez, and Margaret Gandy, Assistant United States Attorneys, *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY. |
|---|---|
| FOR DEFENDANT-APPELLANT: | Cassandra Cean, *pro se*, Danbury, CT. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 16, 2018 order of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Cassandra Cean ("Cean"), an attorney proceeding *pro se*, appeals from the District Court's January 16, 2018 order requiring that she and her co-defendants pay $243,148.51 in restitution to Impac Funding Corporation ("Impac Funding") as master servicer for Impac Secured Asset Series 2007-2 Trust ("Impac Trust"). In 2014, Cean was convicted of wire fraud, in violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, in connection with her involvement in a mortgage fraud scheme. We affirmed Cean's conviction and sentence but remanded for entry of a revised restitution order. *See United States v. Browne*, 621 F. App'x 44 (2d Cir. 2015). That revised order, entered pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, after proceedings before Magistrate Judge Ramon E. Reyes, Jr., is the subject of this appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review MVRA restitution orders "deferentially, . . . revers[ing] only for abuse of discretion." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted). A district court abuses its discretion when "a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

Cean principally attacks the District Court's conclusion that Impac Trust is a "victim" for the purpose of the MVRA.[1] As relevant here, the MVRA defines a "victim" as "a person directly and

---

[1] Cean also challenges the District Court's decision to accord victim status to Santander National Bank ("Santander"). Consistent with Magistrate Judge Reyes's recommendation, the District Court declined to order restitution in Santander's favor because it suffered no loss. Ordinarily, this alone would not be dispositive, since victims can "petition the court for an amended restitution order"

proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). This definition requires a showing that the defendant's criminal conduct was the direct—or "but for"—and proximate cause of the claimed loss. *See Robers v. United States*, 572 U.S. 639, 645 (2014) (interpreting word "proximate[ ]" in § 3663A(a)(2) as requiring that defendant's conduct be proximate cause of loss); *United States v. Marino*, 654 F.3d 310, 322–23 (2d Cir. 2011) (interpreting word "direct[ ]" in § 3663A(a)(2) as requiring that defendant's conduct be the "but for" cause or "cause in fact" of loss). As to proximate cause, "[t]he basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct at issue"—*i.e.*, whether it is "foreseeable." *Robers*, 572 U.S. at 645 (internal quotation marks omitted). In addition, the MVRA requires the Government to establish that the victim suffered an "actual loss," which we have held it can do by proffering "a reasonable approximation of losses supported by a sound methodology." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013).

We have little difficulty in concluding that the Government satisfied these requirements with respect to Impac Trust. *First*, Cean's criminal conduct directly and proximately caused Impac Trust's injury. As to direct cause, but for Cean's participation in the fraudulent scheme, the mortgage that Impac Trust acquired to its detriment would not have existed. And although Impac Trust's status as a "successor lender" marginally complicates the proximate cause inquiry, its purchase of the fraudulently obtained mortgage was foreseeable in light of the common industry practice of selling loans on the secondary market. In other words, it was foreseeable both that the mortgage originator would rely on the fraudulent mortgage application, and that a mortgage issued on the basis of such applications could be sold to a "successor lender" unaware of the fraud.[2]

---

within 60 days of discovering "further losses." 18 U.S.C. § 3664(d)(5). Here, however, Judge Reyes concluded that Santander's unreasonable delay in liquidating the subject property after foreclosing on it in 2010 has functionally severed the causal chain between Cean's fraudulent conduct and Santander's claimed loss. Because additional delay will only serve to further undercut any argument Santander might have concerning restitution, it seems to us highly unlikely that it will ever be able to avail itself of its right under § 3664(d)(5). For the avoidance of doubt, however, we affirm the District Court's conclusion that Santander is a victim for substantially the same reasons as those stated below.

[2] Magistrate Judge Reyes also required the Government to show that Impac Trust relied to some extent on the misrepresentations in the mortgage applications. Our cases on this issue are not entirely consistent. *Compare Marino*, 654 F.3d at 322 (concluding that, in securities fraud context, an "investor may meet the causation requirement of the statutory definition of 'victim' without showing individual reliance" because "[t]he very nature of the crime—concealment—indicates the harm deemed to result from public ignorance"), *with United States v. Reifler*, 446 F.3d 65, 125, 135–36 (2d Cir. 2006) (vacating restitution order where certain claimed victims purchased stock after fraud was revealed and could not have relied on misstatements, and the Government failed to show that certain other claimed victims in fact relied on misstatements). We need not resolve whether a showing of reliance is required because, even if it is, we agree with Judge Reyes that one might

3

*Second*, the Government established that Impac Trust suffered an "actual loss." The evidence at trial showed that Impac Trust purchased the mortgage from Impac Funding for $427,500, its face value. After the property was liquidated in a short sale, Impac Trust received $184,351.49, a difference of $243,148.51. This is, in our view, "a reasonable approximation of losses supported by a sound methodology." *Id.*

Cean's attempts to undermine these commonsense conclusions fall flat. She argues, for instance, that alleged underwriting improprieties and breaches of duty by Impac Funding sever the causal chain between her criminal conduct and Impac Trust's loss. At trial, an expert called by the defendants opined that Impac Funding's underwriting process was insufficient. But, as Magistrate Judge Reyes found, improvements in Impac Funding's underwriting practices would not have necessarily revealed the defendants' fraud. The record concerning Impac Funding's alleged breach of its contractual obligations to Impac Funding is, at a minimum, open to some dispute. To the extent the District Court credited the Government's version of events, we see no error in its decision. In any event, we agree with Judge Reyes that the claimed deficiencies in Impac Funding's practices are insufficient to sever the causal chain between Cean's fraud and Impac Trust's loss.

Cean's remaining contentions are similarly unavailing. She argues that the District Court erred by conferring victim status on Impac Funding. But the District Court did no such thing. The victim here is Impac Trust. The District Court's direction that restitution be paid to Impac Funding, as opposed to Impac Trust, reflects Impac Funding's status as master servicer for Impac Trust; it does not render Impac Funding a victim. Cean also contends that the subject property was liquidated for an inadequate price. All available evidence suggests, however, that the short sale Impac Funding undertook was entirely proper. And the possibility that Impac Trust might recover less than it paid for the mortgage was certainly a foreseeable consequence of the fraudulent scheme in which Cean engaged. *See Robers*, 572 U.S. at 645–46 ("[L]osses in part incurred through a decline in the value of collateral sold are directly related to an offender's having obtained collateralized property through fraud.").

In sum, we see no abuse of discretion here. We have reviewed all of the arguments raised by Cean on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the January 16, 2018 order of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

reasonably infer that Impac Trust relied on Impac Funding's underwriting process, which depended on the veracity of information in the mortgage applications.

4